UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID MICHAEL SNYDER,

      Plaintiff,

v.                                Case No. 8:21-cv-2078-VMC-AEP

HMS TECHNOLOGIES, INC.,
HARRY M. SIEGEL, and
SIERRA 7, INC.,

      Defendants.

_____/

## ORDER

This matter is before the Court on consideration of Defendant Sierra7, Inc.'s Motion to Dismiss Amended Complaint (Doc. # 69) and Defendants HMS Technologies, Inc., and Harry M. Siegel's Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 70), both filed on January 12, 2024. Plaintiff David Michael Snyder, who is proceeding pro se, responded to both Motions. (Doc. ## 80, 81). For the reasons that follow, the Motions are granted as to standing and the amended complaint is dismissed with leave to amend.

## I.   Background

Snyder initiated this action against multiple Defendants on August 30, 2021, asserting claims for false claims under the False Claims Act ("FCA"), false records and statements

1

under the FCA, conspiracy under the FCA, and retaliation under the FCA. (Doc. # 1). On January 13, 2023, the United States declined to intervene. (Doc. # 18). After Snyder's counsel was permitted to withdraw, Snyder was given time to obtain new counsel. (Doc. # 22). After Snyder failed to obtain new counsel by the extended deadline, the Court dismissed without prejudice the claims Snyder asserted on behalf of the United States but allowed him to pursue pro se his retaliation claim under the FCA. (Doc. # 27).

Snyder later filed the pro se amended complaint on September 5, 2023, asserting "on behalf [of] himself" a claim for FCA retaliation against HMS, Siegel, and Sierra7. (Doc. # 32). Central to the amended complaint is the relationship between HMS, Siegel (the owner of HMS), Snyder's company (AeroSage LLC), and a subcontractor of AeroSage's called MCS of Tampa, Inc. (Id. at ¶¶ 31-54); see also (Doc. # 1 at ¶ 157) ("Defendants entered in a subcontract agreement with Relator's former SDVOSB company, AeroSage LLC . . . ."). According to the amended complaint, "Plaintiff and Defendants had at least three subcontract agreements and a Teaming Agreement based on Plaintiff's status as a [Service-Disabled Veteran Owned Small Business ("SDVOSB")] [similarly situated entity ("SSE")], and therefore Plaintiff was contractor and

2

agent for Defendants starting on or about November 22, 2016, and continuing until on or about April 28, 2021." (Doc. # 32 at ¶ 31).

"On or about August 14, 2018, Plaintiff had [a] conference call with several HMS executives informing them that Plaintiff believed MCS was violating the [limitations on subcontracting rules applicable to certain federal contracts ("LOS")] on this SDVOSB T4NG subcontract, and therefore, Defendants were violating the LOS, . . . and Plaintiff was seeking to replace MCS with another qualified subcontractor that would comply with the LOS." (Id. at ¶ 36).

Snyder sent an email to Defendants on August 28, 2018, further addressing Snyder's concerns that his company's subcontractor MCS was not complying with all rules and stating that Snyder's company AeroSage was obtaining a new subcontractor to replace MCS:

> As I mentioned earlier, I am now in final phase of written confirmation of agreement with a Unify OEM authorized subcontractor with a presence in VISN 4 that has stated they can provide superior level of services for the Siemens Unify solution including the additional reporting in amendment 1 which has not been provided by MCS. I should have that signed subcontract confirmation later today or tomorrow.
>
> As a fellow VIP SDVOSB, you know the critical importance of complying with the VA and SBA rules such as limitations on subcontracting. The current subcontractor, MCS of Tampa, has been violating the

3

limits on subcontracting and I am working to rectify this and ensure compliance for the current base year. MCS is not willing to follow the 13 CFR §125.6 requirements and misrepresented the subcontract work.

My new subcontractor and AeroSage will ensure we comply with these limitation [sic] as we have a responsibility to the VA customer, HMS as the prime, our AeroSage representations, the Veterans First Program, and the law. We remain committed to this. As I requested earlier it is critically important that you provide the draft Option Year 1 subcontract agreement, to ensure there is no misunderstanding of the requirements of the contract and the FAR, which we will be able to confirm shortly. I look forward to receiving the option year 1 subcontract, in order to finalize confirmation of compliant level of Unify support for your VA contract.

(Id. at ¶ 38).

"On or about August 31, 2018, Defendants retaliated against Plaintiff by terminating the Plaintiff's subcontract option year for a VA T4NG contract stating, 'With today (8/31/18) being the first day of the option period, we have had to move forward and provide seamless coverage for the VA utilizing another partner that evidenced their capability to provide Siemens Unify support.'" (Id. at ¶ 54). The alleged retaliatory actions include: "Defendants suspended option years on two different VA T4NG subcontracts with the Plaintiff, withheld and then delayed subcontract payments, hired away Plaintiff['s] assets to perform SDVOSB contracts,

and effectively terminated Plaintiff from $10s millions of SDVOSB SSE subcontracts that Plaintiff was essentially the incumbent subcontractor that had agreement for a willing LOS compliant OEM service provider in replacement for MCS in current, option, and future subcontracts or contracts." (Id. at ¶ 53).

According to the amended complaint, "Defendant's damages include lost wages or loss of earnings, lost contracting performance credit record, likely future VA SDVOSB contract/subcontract earnings, and future lost earning capacity." (Id. at ¶ 63). "The direct damages from the Defendants' and Co-Conspirators' retaliatory actions from protected disclosures on just these two, then performed, VA T4NG contracts in furtherance of the FCA is at least $9 million in subcontract value and performance history." (Id. at ¶ 64). "Plaintiff would [have] been awarded and paid these government subcontract funds if Defendants and Co-Conspirators awarded/renewed them with Plaintiff and Plaintiff's LOS compliant new subcontractor." (Id. at ¶ 68). "But for Plaintiffs protected actions, Plaintiff lost earnings on more than $70 million performed, current, option year, and awarded subcontracts that manifestly would have been awarded and earned by the Plaintiff." (Id.).

Now, Defendants move to dismiss the amended complaint, arguing that Snyder lacks standing and that the amended complaint fails to state a claim for FCA retaliation. (Doc. ## 69, 70). Snyder has responded to both Motions (Doc. ## 80, 81), and the Motions are ripe for review.

## II.   **Legal Standard**

### A.   **Rule 12(b)(1)**

Motions filed under Federal Rule of Civil Procedure 12(b)(1) question this Court's jurisdiction over the subject matter of the case. Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Where the jurisdictional attack is based on the face of the pleadings, as here, the Court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). In factual attacks, on the other hand, the Court delves into the arguments asserted by the parties and the credibility of the evidence presented. Garcia v. Copenhaver, Bell, & Assocs., 104 F.3d 1256, 1260–61 (11th Cir. 1997).

Rule 12(h)(3) states: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Thus, the Court may consider motions to dismiss for lack of subject matter jurisdiction at any time." Roberts v. Swearingen, 358 F. Supp. 3d 1341, 1346 (M.D. Fla. 2019).

**B.     Rule 12(b)(6)**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan

7

v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III.  **Analysis**

All Defendants challenge Snyder's standing to bring this suit on his own behalf. (Doc. # 69 at 3-4, 12-15); (Doc. # 70 at 7-10). As they note, Snyder sued in his individual capacity, but only Snyder's LLC, "AeroSage [LLC,] had a contractual relationship with HMS." (Doc. # 70 at 9); see also (Doc. # 32 at 1) ("David M. Snyder, brings this amended complaint, on behalf [of] himself.").

"A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction." Baez v. LTD Fin. Servs., L.P., No. 6:15-cv-1043-PGB-DCI, 2016 WL 3189133, at *2 (M.D. Fla. June 8, 2016) (citing Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

To establish standing, "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. An injury-in-fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). The injury must be "particularized," meaning it "must affect the plaintiff in a personal and individual way." Id. (quoting Lujan, 504 U.S. at 560 n.1). Additionally, the injury must be "concrete," meaning "it must actually exist." Id. "To establish standing, a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Guillaume v. Hyde, No. 20-60276-CIV, 2020 WL 3317042, at *3 (S.D. Fla. June 18, 2020) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)), aff'd sub nom. Guillaume v. U.S. Dep't of Veterans Affs., 847 F. App'x 627 (11th Cir. 2021).

The Court agrees with Defendants that Snyder lacks standing. In so holding, the Court has conducted a review of the amended complaint. The Court has also considered the

9

contract between HMS and AeroSage LLC, which was attached to the Motions to Dismiss but was referenced in and is central to the allegations of the amended complaint. See (Doc. # 70-1, Ex. A) (Subcontract Agreement between HMS Technologies, Inc. and AeroSage LLC, signed by Snyder as President of AeroSage in November 2016). HMS did not have a contract with Snyder. Rather, it had a contract with AeroSage, of which Snyder was a member and President.

"Under Florida law, a member of an LLC may bring an action on an individual basis only if: (1) there is a direct harm to the member, such that the alleged injury does not flow subsequently from an initial harm to the company; and (2) there is a special injury to the member that is separate and distinct from those sustained by other members." Chavez v. Coro, No. 19-23577-CIV, 2019 WL 4929929, at *2 (S.D. Fla. Oct. 7, 2019); see also Dinuro Invs., LLC v. Camacho, 141 So. 3d 731, 739-40 (Fla. 3d DCA 2014) ("[A]n action may be brought directly only if (1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company **and** (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members."). "Under the direct harm test, the

court examines 'whether the harm from the alleged wrongdoing flows first to the company and only damages the shareholders or members due to the loss in value of their respective ownership interest in the company, or whether the harm flows directly to the shareholder or member in a way that is not secondary to the company's loss.'" Chavez, 2019 WL 4929929, at *2 (quoting Strazzulla v. Riverside Banking Co., 175 So. 3d 879, 883 (Fla. 4th DCA 2015)). "Members of a limited liability company may also bring a direct action 'where there is a separate statutory or contractual duty owed by the wrongdoer to the individual.'" Ecomed, LLC v. Asahi Kasei Med. Co., No. 16-62301-CIV, 2017 WL 7795446, at *2 (S.D. Fla. Apr. 28, 2017) (quoting Strazzulla, 175 So. 3d at 885).

Here, the allegations of the amended complaint are that Defendants retaliated primarily by declining to exercise options on HMS' subcontracts with Snyder's company AeroSage. (Doc. # 32 at ¶¶ 53-54). Additionally, Snyder alleges Defendants "withheld and then delayed subcontract payments, hired away Plaintiff['s] assets to perform SDVOSB contracts, and effectively terminated Plaintiff from $10s millions of SDVOSB SSE subcontracts that Plaintiff was essentially the incumbent subcontractor that had agreement for a willing LOS compliant OEM service provider in replacement for MCS in

current, option, and future subcontracts or contracts." (Id. at ¶ 53). Snyder alleges that the damage to him was millions of dollars in lost subcontracts for AeroSage. See (Id. at ¶ 68) ("Plaintiff would [have] been awarded and paid these government subcontract funds if Defendants and Co-Conspirators awarded/renewed them with Plaintiff and Plaintiff' LOS compliant new subcontractor. But for Plaintiffs [sic] protected actions, Plaintiff lost earnings on more than $70 million performed, current, option year, and awarded subcontracts that manifestly would have been awarded and earned by the Plaintiff.").

Thus, the alleged damage to Snyder described in the amended complaint is not a direct harm or a special injury to Snyder. See Guillaume, 847 F. App'x at 629 ("Here, the district court did not err in dismissing Mr. Guillaume's complaint for lack of standing. Mr. Guillaume did not demonstrate that he suffered a distinct injury, separate and apart from the diminution in value of his company's corporate assets, to support his contention that he has shareholder standing. Although he argues that he suffered because his name was taken from the VA registry for veteran-owned small businesses, it was AFILY8 that suffered the damages because the preferential contracting benefit extended to the business

— not to him directly. Further, he did not allege or demonstrate a violation of duty owed directly to him."). Rather, the damages Snyder alleges he suffered all flow from the harm to AeroSage of losing its contracts. Snyder lost millions of dollars only because AeroSage lost contracts that would have brought it millions of dollars. Nor does the amended complaint plausibly plead a separate statutory or contractual duty owed to Snyder individually. In short, Snyder lacks standing.[1]

Therefore, the amended complaint must be dismissed without prejudice for lack of subject matter jurisdiction. The Court harbors serious doubt that Snyder will be able to plausibly allege a direct harm and special injury to himself or a separate statutory or contractual duty owed to him. Nevertheless, in light of his pro se status, the Court will

---

[1] It does not appear that there would be a standing issue if AeroSage LLC asserted the FCA retaliation claims against Defendants. The Court notes that AeroSage is currently in bankruptcy. See In re AeroSage LLC, Case No. 8:21-bk-3694-CPM (Bankr. M.D. Fla. July 15, 2021). Thus, it is likely that any FCA retaliation claim by or on behalf of AeroSage would have to be asserted in the bankruptcy court. Additionally, because AeroSage is a corporate entity, it would not be able to proceed pro se. See Blue Moon Mktg., LLC v. Matthews, No. 6:14-cv-2036-CEM-LRH, 2019 WL 13246832, at *2 (M.D. Fla. Oct. 4, 2019) ("[L]imited liability companies, like corporations, 'may appear and be heard only through counsel.'" (citation omitted)); M.D. Fla. Local Rule 2.02(b)(2) ("A party, other than a natural person, can appear through the lawyer only.").

Case 8:21-cv-02078-VMC-AEP   Document 82   Filed 02/08/24   Page 14 of 15 PageID 431

give Snyder leave to amend a final time in order to allege standing, if he can do so consistent with the requirements of Federal Rule of Civil Procedure 11. See Brown v. Consol. Freightway, 152 F.R.D. 656, 660 (N.D. Ga. 1993) ("The provisions of Rule 11 apply to pro se litigants as well as attorneys."); Thomas v. Evans, 880 F.2d 1235, 1239 (11th Cir. 1989) ("An attorney or a party may be sanctioned under Rule 11 for filing a pleading that: (1) has no reasonable legal basis; (2) has no reasonable factual basis; or, (3) is filed for an improper purpose.").

In giving leave to amend, the Court does not give Snyder leave to add additional parties or additional claims. Rather, he is merely given leave to amend his FCA retaliation claim against the current Defendants in a second amended complaint. Additionally, the Court advises Snyder that it is improper to incorporate by reference allegations from previous pleadings, as he did in the amended complaint. All allegations he wishes to include in the second amended complaint must be alleged in the second amended complaint.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Sierra7, Inc.'s Motion to Dismiss Amended Complaint (Doc. # 69) is **GRANTED** as to standing.

14

(2)  Defendants HMS Technologies, Inc., and Harry M. Siegel's
     Motion to Dismiss Plaintiff's Amended Complaint (Doc. #
     70) is **GRANTED** as to standing.

(3)  The amended complaint (Doc. # 32) is dismissed without
     prejudice for lack of standing.

(4)  Pro se Plaintiff David Michael Snyder may file a second
     amended complaint that properly establishes his standing
     to pursue his claims by **March 1, 2024**. Failure to timely
     file a second amended complaint by that date will result
     in the closure of this case.

     **DONE** and **ORDERED** in Chambers in Tampa, Florida, this 8th

day of February, 2024.

_____

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE